UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------X
EILEEN TUCKER and LORENZO N. CHANCE,

           14-cv-07054 (NG)(RER)

           Plaintiffs,

   - against -           **SECOND AMENDED COMPLAINT**

THE CITY OF NEW YORK, ANTHONY BRUNO,    **JURY TRIAL DEMANDED**
MAURICE O'CONNOR, DULAL BHATTACHARJEE,
and POLICE OFFICERS JOHN DOE 1-5, being fictitious and the
name "DOE" intended to represent those police officers whose
names are unknown to the plaintiffs that were involved
in the false arrest, battery and of Plaintiffs,

           Defendants.
------------------------------------------------------------------------------X

Plaintiffs, by their attorneys, Mangan Ginsberg LLP, for their Complaint against the Defendants, allege, at all times material herein, that:

NATURE OF THE ACTION

1)   Plaintiffs Eileen Tucker and her son, Lorenzo Chance, bring this action for false arrest, excessive force, defamation, and battery, under 42 U.S.C. § 1983 and state law causes of action, stemming from events on December 4, 2013, defendant New York City Police Officers burst into the plaintiffs' home without a warrant, probable cause or consent, and forcibly arrested plaintiffs. Police Officer Maurice "O'Connor" then committed an unlawful and intrusive strip search, in public, upon plaintiff Eileen Tucker, without explanation or probable cause to do so. The defendant police officers apparently relied upon deliberately false and malicious statements made by defendant building inspector Dulal Bhattacharjee, employed by the City of New York, who falsely reported that Eileen Tucker had reported that he had been assaulted by plaintiff Tucker and that his "camera" had been stolen. After being beaten by defendants, plaintiffs were held in police custody

1

for approximately 30 hours each, before being arraigned and released on their own recognizance by the Queens County Criminal Court, where they were each charged with Grand Larceny in the Fourth Degree (a Class E Felony) and three other misdemeanor counts, including Assault in the Third Degree. All charges were dismissed against the plaintiffs, upon the agreement of the Queens County District Attorney, as "ACD" (adjourned in contemplation of dismissal) and are now sealed.

## VENUE AND JURISDICTION

2) This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution, and pursuant to New York State tort law and the New York State Constitution.

3) Jurisdiction is founded on the existence of a Federal question, and a question arising under an Act of Congress, U.S.C. Title 42, § 1983, as hereinafter more fully appears.

4) Venue is properly laid in this District under 28 U.S.C. § 1391(b), this being the District in which the claim arose.

## PARTIES

5) Plaintiff Eileen Tucker is a resident of the State of New York, County of Queens, and is African American.

6) Defendant City of New York (hereinafter referred to as the "City") is, and was at all times material herein, a municipal corporation formed pursuant to the laws of the State of New York and was the employer of the defendant agents and officers.

7) Defendant Police Officer Anthony Bruno, Shield #15107, is, upon information and belief, a New York City Police Officer and was an NYPD Police Officer at the time of the events described herein and acted in his official and individual capacities. Upon information and belief, Police Officer Anthony Bruno is currently assigned to Patrol Borough Queens South

– Auto Larceny Unit and can be served with process at 242-20 North Conduit Ave, Queens, NY 114422.

8) Defendant Police Officer Maurice O'Connor, Shield #1606, is, upon information and belief, a New York City Police Officer and was an NYPD Police Officer at the time of the events described herein and acted in his official and individual capacities. Upon information and belief Police Officer Maurice O'Connor remains at the 113th Precinct and can be served with process at 167-02 Baisley Boulevard, Queens, NY 11434.

9) Defendants "John Does" 1-5, are New York City Police Officers and were NYPD Police Officers at the time of the events described herein and acted in their official and individual capacities.

10) Defendant Dulal Bhattacharjee is an agent for the New York City Department of Buildings and was at the time of the events described herein and acted in his official an individual capacity. Upon information and belief, Dulal Bhattacharjee can be served with process at the Department of Buildings, Queens Borough Office, 120-55 Queens Blvd., Kew Gardens, NY 11424.

11) All individual Defendants are being sued in their individual capacities.

12) The City of New York (the "City") at all times material herein was responsible for the hiring, training, supervision, discipline, retention and promotion of the police officers, sergeants, agents and/or employees of the New York City Police Department (the "NYPD") and at the Department of Buildings (the "DOB").

FACTS

13) On December 4, 2013, at approximately 12:00 P.M. plaintiffs were lawfully inside of their house at 201-05 111th Avenue, in the County of Queens, New York (the "Tucker House")

when an unidentified person attempted to enter onto the property through a locked fence. In December 2013, the Tucker Home was still under renovation, and improvements were being made to it. Plaintiff Tucker spoke to this person, who she now believes was defendant Dulal Bhattacharjee through the locked fence. Bhattacharjee demanded to gain entry through the locked fence, but Tucker did not permit him to enter.

14) There was no physical contact between Bhattacharjee and Tucker or anyone else (including plaintiff Chance) at that time, or any other time. Bhattacharjee did not identify himself as working for the City of New York or the DOB in any other way.  Bhattacharjee did not give his name or state a purpose for wanting to gain entry.

15) Tucker then left the gate at the perimeter of her property where she had been speaking to Bhattacharjee, and returned to her house, and re-entered. The gate was left locked.

16) A few minutes after re-entering her home, Tucker heard a loud knock at her front door, and went to see who was knocking. She opened the front door who to see who it was, and defendant Police Officer O'Connor, who was with Officer Bruno, pushed the door open, and neither of them spoke to Tucker before pushing their way into her home, nor did they identify themselves as police officers or employees of the City of New York.

17) Defendant O'Connor did not communicate with Tucker in any way, before grabbing her by her hair, and pulled her out of her home. Tucker fell to her knees at the top of the stairway that leads to the front door. O'Connor then grabbed Tucker under the arm, and forced her down the stairs, dragging her before she was able to get to her feet. Though Tucker was crying and asking them to stop, the officers did not communicate with her.

18) Once the officers had Ms. Tucker out on her lawn, in public, Officer O'Connor demanded "where is the camera?" Not knowing what he meant, Tucker stated that her camera, was inside the house in her purse.

19) Officer O'Connor then "searched" Ms. Tucker by placing his hands inside of her clothing, and inside of her undergarments, touching her without her consent and in an inappropriate manner. O'Connor shoved his knee into Tucker's back. O'Connor did not find a camera, a weapon or any other evidence of a crime in Tucker's clothing. O'Connor then reached again to pull Tucker's hair and struck her with his hand, until Officer Bruno told O'Connor to "quit it – snap out of it."

20) Tucker was then handcuffed and placed in the back of a waiting police car.

21) An officer, believed to be Officer O'Connor, then entered the Tucker Home without permission or consent, and found plaintiff Chance, who was sweeping on the second floor with headphones on, and was taken by surprise. O'Connor seized Chance at gunpoint, and handcuffed him. Chance complied.

22) Chance did not have any conversation with Bhattacharjee at any time, and no interaction with him in any way, nor it is likely that Bhattacharjee knew that Chance was present at the Tucker House at that time.

23) Neither Chance nor Tucker resisted in any way, though both would be charged with resisting arrest.

24) Tucker and Chance were then transported to the Queens County Central Booking, and were arraigned late in the afternoon on December 5, 2013. They were both released on their own recognizance without bail, after being charged with Grand Larceny, Third Degree Assault, Resisting Arrest and Obstruction of Governmental Administration.

25) Defendant Anthony Bruno served as the "deponent" of the criminal complaint, and stated that the allegations supporting the criminal charges were based on statements made to him by "complainant" Dulal Bhattacharjee.

26) According to Bruno Bhattacharjee stated that the Tucker and Chance "Grabbed [Bhattacharjee] by his arms and that [Tucker] proceded to remove a camera from [Bhattacharjee] person and place said camera down her shirt" and that Tucker and Chance "caused [Bhattacharjee] to sustain a laceration to his hand as well as substantial pain." Bruno also asserts that Bhattacharjee stated to him that Tucker and Chance "proceeded to push [Bhattacharjee] down a set of steps and out of the [Tucker premises] causing substantial pain." These statements were deliberately false, made without good faith to the defendant police officers with malice.

27) Due to the conduct of the defendants, Tucker suffered injuries to her neck, back and wrists.

28) Upon information and belief, the City of New York knew of the propensity of these individual defendants to act falsely and violently against the citizens of the City of New York in violation of their civil rights and personal safety, but did nothing to prevent this conduct either through proper training, supervision or discipline. This conduct is, was and will continue to be, condoned by supervising ranking police officers and the City of New York.

29) Upon information and belief, the conduct of the Defendant NYPD police officers was consistent with the City of New York's policies for the supervision, training, discipline and hiring of NYPD officers. NYPD Officers are encouraged to make false statements and falsely charge citizens after injuring them, in order to provide justification or "cover" for the officers' violent and unlawful conduct towards citizens. The City of New York is well

aware of this and pays millions of dollars per year settling cases involving exactly this type of police misconduct and these types of false charges. The City of New York and the supervisors at the New York City Police Department consider this misconduct and the harm caused to the City's citizens to be nothing more than the "cost of doing business." With proper training and an emphasis of policing values consistent with the Fourth Amendment of the United States Constitution, the City of New York and the NYPD supervisors could curtail and prevent this type of conduct. Yet, these defendants choose not to prevent this police misconduct though they have the knowledge of its prevalence, and therefore accept it, condone it, approve it.

30) Upon information and belief, the City of New York had reason to believe, through notice of the prior conduct of its police officers, that its police officers are prone to and do falsely arrest, imprison, defame and charge civilians, that its police officers are prone to and do batter, abuse and assault prisoners, that its police officers are prone to make false accusations in sworn instruments, and the City of New York through the NYPD does not adequately train, supervise or prevent this conduct, and that the NYPD and the City, by knowing of this pattern of conduct and without preventing or restricting it, does in fact condone this conduct.

31) Conditions precedent for New York State Tort Law claims have been satisfied, including filing of notices of claim and compliance with time constraints for suit.

**AS AND FOR A FIRST CAUSE OF ACTION**
(False Arrest Under the 4th and 14th Amendments
of the U.S. Constitution and 42 U.S.C. § 1983)

32) Plaintiffs re-allege the facts stated in all paragraphs above as if stated fully herein.

33) Plaintiffs were falsely and unlawfully arrested, imprisoned, detained, searched and deprived of liberty against their will.

34) Defendant police officers violated the protections guaranteed these Plaintiffs as citizens of the United States by arresting, detaining, imprisoning, and kidnapping her without probable cause.

35) Defendant police officers committed these false and unlawful arrests, imprisonments, detentions, searches and deprivations of liberty while knowing that they did not have probable cause, knowing that these acts were unlawful and knowing that these acts were without justification and Defendants engaged in these acts to intentionally violate the Plaintiffs' rights, privileges and immunities secured by the United States Constitution, or engaged in these acts with reckless disregard to the Plaintiff's rights, privileges and immunities secured by the United States Constitution.

36) Defendant police officers acted under color of law.

37) Defendant police officers apprehended these Plaintiffs based without probable cause or reasonable suspicion.

38) The City of New York violated protections guaranteed Plaintiff as citizens of the United States by maintaining a policy or practice to deny citizens their constitutional protections without due process and/or on the basis of their race.

39) The City of New York violated protections guaranteed Plaintiffs as citizens of the United States by failing to train, failing to supervise, failing to discipline and negligently hiring the police officers who arrested, detained, imprisoned and humiliated Plaintiffs.

40) Defendant police officers are liable for said damage and injuries pursuant to the Fourth and Fourteenth Amendments to the Constitution of the United States, and 42 U.S.C. § 1983.

## AS AND FOR A SECOND CAUSE OF ACTION

(False Arrest Under NY Tort Law)

41) Plaintiffs re-allege the facts stated in all paragraphs above as if stated fully herein.

42) Plaintiffs was falsely arrested in that she was wrongly, unlawfully and unjustifiably detained, arrested, searched and deprived of liberty against her will.

43) The wrongful, unjustifiable and unlawful apprehension, arrest, detention, search and imprisonment were carried out without probable cause.

44) All Defendants are liable for said damage and injuries pursuant to Tort law of the State of New York.

## AS AND FOR A THIRD CAUSE OF ACTION

(Use of Excessive Force Under the 4th and 14th Amendments
of the U.S. Constitution and 42 U.S.C. § 1983)

45) Plaintiffs re-allege the facts stated in all paragraphs above as if stated fully herein.

46) Defendant police officers used excessive force in detaining Plaintiffs, by unnecessarily striking Ms. Tucker, throwing her on the ground, by grabbing her hair and using tightened restraints for excessive periods of time, and holding the Plaintiff in detention for excessive periods of time, in violation of the 4th Amendment and the 14th Amendment.

47) Defendants committed battery against the Plaintiff in that they actually struck or touched her in a violent, angry, rude or insolent manner.

48) Defendants' intent to injure concurred with the use of unlawful violence upon the battered Plaintiff.

49) The intended injuries were to the feelings, mind, emotions and body of the Plaintiff.

50) All Defendants acted under color of law.

51) The City of New York violated protections guaranteed Plaintiff as a citizen of the United States by maintaining a policy or practice to deny Plaintiff her constitutional protections without due process and/or on the basis of her race.

52) The City of New York violated protections guaranteed Plaintiff as a citizen of the United States by failing to train, failing to supervise, failing to discipline and negligently hiring the police officers who conducted these acts of violence, assault, battery and excessive force.

53) All Defendants are liable for said damage and injuries pursuant to the Fourth and Fourteenth Amendments to the Constitution of the United States, and 42 U.S.C. § 1983.

### AS AND FOR A FOURTH CAUSE OF ACTION

(Unlawful Post-Arrest Investigatory Strip Search Under the 4th and 14th Amendments of the U.S. Constitution and 42 U.S.C. § 1983)

54) Plaintiffs re-allege the facts stated in all paragraphs above as if stated fully herein.

55) Defendant police officer O'Connor unlawfully searched Ms. Tucker, after pulling her to the ground the ground, by dragging her out of her home by her hair, and striking her with his hands and knee, while detained, he conducted a search of her body with his hands, under her undergarments and clothing, in public in front of her house, in violation of the 4th Amendment and the 14th Amendment.

56) The apparent purpose of the search was the find a camera, though Ms. Tucker was wearing only a cotton t-shirt, tights and a pair of flip-flops, and any object on her body would have been clearly evident without the need for searching under her clothing.

57) Defendant committed battery against the Plaintiff in that they actually struck or touched her in an unwelcome and inappropriate and harmful manner.

58) The intended injuries were to the feelings, mind, emotions and body of the Plaintiff.

59) Defendant acted under color of law.

60) The City of New York violated protections guaranteed Plaintiff as a citizen of the United States by maintaining a policy or practice to deny Plaintiff her constitutional protections without due process and/or on the basis of her race.

61) The City of New York violated protections guaranteed Plaintiff as a citizen of the United States by failing to train, failing to supervise, failing to discipline and negligently hiring the police officers who conducted these acts of violence, assault, battery and excessive force.

62) All Defendants are liable for said damage and injuries pursuant to the Fourth and Fourteenth Amendments to the Constitution of the United States, and 42 U.S.C. § 1983.

## AS AND FOR A FIFTH CAUSE OF ACTION
(Assault and Battery Under NY Tort Law)

63) Plaintiff re-alleges the facts stated in all paragraphs above as if stated fully herein.

64) Defendants battered and assaulted Plaintiff during the apprehensions and arrest of the Plaintiff, striking the Plaintiff, throwing Plaintiff Tucker to the ground, and touching Plaintiff inappropriately, using tightened restraints for excessive periods of time.

65) Defendants committed battery against the Plaintiff in that they actually struck or touched her in a violent, angry, rude, insolent, unwelcome or inappropriate manner.

66) Defendants' intent to injure concurred with the use of unlawful violence upon the battered Plaintiff.

67) The intended injuries were to the feelings, mind, emotions and body of the Plaintiff.

68) All Defendants acted under color of law.

69) The City of New York violated protections guaranteed Plaintiff as a citizen of the United States by maintaining a policy or practice to deny citizens their constitutional protections without due process and/or on the basis of her race.

70) The City of New York violated protections guaranteed Plaintiff as a citizen of the United States by failing to train, failing to supervise, failing to discipline and negligently hiring the police officers who conducted these acts of violence, assault, battery and excessive force.

71) The City of New York is vicariously liable for the acts of its agents when these acts fall within the scope of the agents' employment.

72) All Defendants are liable for said injuries pursuant to Tort law of the State of New York.

## AS AND FOR A SIXTH CAUSE OF ACTION

(Defendant Bhattacharjee's Per Se Defamation)

73) Plaintiffs re-alleges the facts stated in all paragraphs above as if stated fully herein.

74) Bhattacharjee deliberately published false statements about plaintiff Tucker, and perhaps also plaintiff Chance to third-party police officers, and Bhattacharjee knew his statements were false. These false statements were made without a good faith basis and stated that Tucker and perhaps Chance, had committed crimes.

75) As a result of Bhattacharjee's false statements, Plaintiffs were falsely arrested, subject to excessive force and battery, and was otherwise injured to her body and her mind, and suffered damage to their reputations.

76) Bhattacharjee's defamatory statements were defamation per se, and are not entitled to qualified immunity because they were made with malice and without a good faith purpose.

77) Bhattacharjee, and the City of New York, are liable for the defamatory statements made by Bhattacharjee, whether in writing or orally, to the police officers on or about December 4, 2013, at or about 12:00 pm.

## **AS AND FOR A SIXTH CAUSE OF ACTION**

(Defendant City of New York's Negligent Hiring,
Supervision, Training and Failure to Discipline)

78) Plaintiff re-alleges the facts stated in all paragraphs above as if stated fully herein.

79) The City of New York knows of the likelihood that its police officers make false arrests without probable cause, and using excessive force and battery upon persons, knows that its police officer employees have the propensity to falsely charge and maliciously prosecute its citizens, know that its police officers have the propensity to use excessive force, to use techniques intended to cause extreme emotional harm and distress while in police custody, and to defame its citizens, but has failed to protect Plaintiff from this conduct by negligently hiring, failing to properly screen candidates for employment, failing to train, failing to supervise and failing to discipline its police officers.

80) As a result, Plaintiff was falsely arrested, subject to excessive force and battery, and was otherwise injured to her body and her mind.

81) Plaintiff was injured due to the failure of the City of New York, through the NYPD, to properly hire, screen, train, supervise and discipline its officers, including the Defendant officers.

82) The City of New York is liable to the Plaintiff for her injuries sustained as a result of negligent hiring, screening, training, supervision and disciplining.

**PRAYER FOR RELIEF**

    WHEREFORE, Plaintiffs demand judgment and prays for the following relief, jointly and severally, against the Defendants:

    (a)    special and compensatory damages in the amount of one million dollars ($1,000,000) dollars;

    (b)    punitive damages in the amount of one million dollars ($1,000,000) dollars;

    (c)    reasonable attorney's fees and the costs of litigation of this action pursuant to 42 U.S.C. § 1988;  and

    (d)    such other and further relief as to this Court seems just and proper.

Dated:  New York, New York
          February 26, 2015

                                      **MANGAN GINSBERG, LLP**

                                      /s/
                    By:  _____
                          Michael P. Mangan (MM-5773)
                          Christopher R. Travis  (CT-7103)
                          *Attorneys for Plaintiff*
                          80 Maiden Lane, Suite 509
                          New York, NY 10038
                          (212) 248-2120